IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| BASHAN SCHEURER-HENRY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>ENVOY OF RICHMOND, LLC )<br>d/b/a ENVOY OF WESTOVER HILLS )<br>)<br>-and- )<br>)<br>VERONICA M. HASKINS )<br>)<br>Defendants. )<br>) | Case No. 3:21-cv-376<br><br>**TRIAL BY JURY<br>DEMANDED** |

# **COMPLAINT**

Plaintiff, Bashan Scheurer-Henry ("Plaintiff"), by counsel, files the following Complaint against Defendants, Envoy of Richmond, LLC d/b/a Envoy of Westover Hills ("Envoy") and Veronica M. Haskins ("Haskins"), jointly and severally.

Plaintiff asserts the following claims against the Defendants:

Counts I, II and III – Under Title 42 U.S.C. § 12117, for deprivation of rights and privileges secured to Plaintiff by §§ 12112(a-b), 12201(d) and 12203(a-b) of the Americans With Disabilities Act ("ADA").

Counts IV-VI – Under Virginia common law, for fraud in the inducement, breach of contract, and tortious interference with contract.

Plaintiff seeks (a) compensatory damages and punitive damages in the sum of **$850,000.00**, plus (b) prejudgment interest on the principal sum awarded by the Jury

1

pursuant to § 8.01-382 of the Virginia Code (1950), as amended (the "Code"), plus (c) reasonable attorney's fees and expert witness fees pursuant to Title 42 U.S.C. §§ 1988 and 12205, and (d) costs incurred.

## I. PARTIES

1. Plaintiff is a citizen of Virginia. She is a registered nurse. She suffers from rheumatoid arthritis and Ehlers-Danlos Syndrome.[1] These conditions lead her to seek positions that allow her to use her extensive nursing experience to manage a unit because of the physical difficulty she experiences using her arthritic hands to execute the catheters and IVs. Plaintiff takes great pride in her unblemished and extensive resume.

2. Defendant, Envoy, is a Virginia limited liability company. Envoy is a provider of senior healthcare services, specializing in post-acute care. Envoy operates a 174-bed skilled nursing facility in Richmond, Virginia, on Forest Hill Avenue. [https://centers.consulatehealthcare.com/ll/US/VA/Richmond/4403-Forest-Hill-Ave ]. Envoy is an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5)(A) and a "covered entity" within the meaning of § 12112(a) of the ADA.

---

[1] Ehlers-Danlos syndrome is a group of inherited disorders that affect a person's connective tissues — primarily her skin, joints and blood vessel walls. Connective tissue is a complex mixture of proteins and other substances that provide strength and elasticity to the underlying structures in your body. People who have Ehlers-Danlos syndrome usually have overly flexible joints and stretchy, fragile skin. This can become a problem if she have a wound that requires stitches, because the skin often isn't strong enough to hold them. Complications depend on the types of signs and symptoms a person has. For example, overly flexible joints can result in joint dislocations and early-onset arthritis. Fragile skin may develop prominent scarring. [https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/symptoms-causes/syc-20362125].

3.      Defendant, Haskins, is a citizen of Virginia. At all times relevant to this action, Haskins was director of clinical services (also known as director of nursing) at Envoy.

## II. JURISDICTION AND VENUE

4.      The District Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and § 1367 (supplemental jurisdiction).

5.      The Defendants are at home in Virginia, and subject to the Court's general personal jurisdiction.

6.      Venue is proper in the Richmond Division of the United States District Court for the Eastern District of Virginia. The events or omissions giving rise to the claims stated in this action occurred in the Eastern District of Virginia.

7.      Plaintiff has duly exhausted her administrative remedies. She timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") – EEOC Charge No. 438-2018-00895. On March 11, 2021, she (by counsel) received her Right to Sue Letter. This action is filed within 90 days of Plaintiff's receipt of the Right to Sue Letter.

## III. STATEMENT OF THE FACTS

8.      Plaintiff is a qualified individual under the ADA with mental or physical impairments that substantially limit one or more of her major life activities.[2] She can perform the essential functions of her employment position with a reasonable

---

[2] The term "disability" means, with respect to an individual, (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)). *42 U.S.C. § 12102(1)*. Plaintiff's disabilities substantially limit her ability to care for herself, perform manual tasks, to walk, stand, lift, bend and work.

accommodation. Her severe and debilitating disabilities and serious health conditions were, at all times relevant to this action, well-known to Envoy. Plaintiff brings this action because Envoy failed and refused to offer her reasonable accommodation for her disabilities and because Envoy harassed and retaliated against her because of her exercise of rights granted by the ADA. Envoy's actions described in this Complaint were discriminatory on their face. Plaintiff suffered extreme physical and emotional trauma as a result of the failure to accommodate and the retaliatory work environment created by Envoy.

9.   In October 2017, Plaintiff applied for a job at Envoy. Haskins interviewed Plaintiff. Haskins told Plaintiff that the unit manager position was already filled, but that Envoy needed a wound care coordinator. The job was perfect for Plaintiff, given her extensive experience, excellent organizational skills and in light of her disabilities and medical conditions. Plaintiff explained to Haskins that the wound care coordinator position was ideal because she (Plaintiff) would not have to pull and push and tug on patients, actions that Plaintiff could not perform because of her disabilities. Plaintiff explained that she did not want to cause or exacerbate the degradation of her muscles, the nerves or anything related to what was going on with her body because of her rheumatoid arthritis and Ehlers-Danlos Syndrome.

10.   Envoy hired Plaintiff as wound care coordinator. Envoy represented to Plaintiff that if she accepted the employment, she would not have to engage in physical interaction with patients. Plaintiff was hired to work four (4) days a week. She fully disclosed her medical conditions and disabilities, requesting some minor accommodations, such as an iPad or computer, to use instead of writing hand written

notes which was very difficult with rheumatoid arthritis. When Plaintiff did her in-house drug test, she also informed Envoy HR (a woman named "Dot") of her disabilities and health conditions, and provided proof via text message and pictures of Plaintiff's prescriptions.

11.  Envoy represented to Plaintiff that it agreed to the simple accommodations of an iPad or computer for Plaintiff as part of Plaintiff's employment.

12.  After she began working for Envoy, Plaintiff discovered that Haskins had misrepresented the actual scope of Plaintiff's employment. Plaintiff had been hired to be a wound care coordinator, but, in addition to the obligations expected of that position, Haskins demanded that Plaintiff also perform the job of treatment nurse, something that Plaintiff was not physically able to do with her medical conditions. Haskins demanded that Plaintiff work eleven (11)+ hour days to cover two positions, the one Plaintiff was hired for and that of a treatment nurse – a position Plaintiff would not have accepted if she had known the truth and one she was not prepared to perform.

13.  When Plaintiff asked for the simple accommodations that she had been promised under the terms of her employment agreement, Haskins began to retaliate. Haskins berated and mocked Plaintiff in front of the other staff at the nurse's station, demeaning her in front of her peers and colleagues. Haskins ordered Plaintiff to perform strenuous work that Haskins knew Plaintiff could not do, such as lift and push patients to treat their wounds, and to walk continuously for hours a day, things that inflicted pain on Plaintiff and made Plaintiff's conditions worse than they had ever been. Plaintiff was given a caseload of 30-80 patients, something that was physically impossible for even a perfectly fit person to complete in 4 work days. As part of her employment as a wound

care coordinator, Plaintiff reasonably expected to have to coordinate nurses and treatment schedules, not to individually treat every single wound personally.

14. Plaintiff alerted her immediate supervisor, Kris Fuch-Manns, to the situation with Haskins, and while Ms. Fuch-Manns listened to the issues and promised to address them, nothing was ever done.

15. Haskins made Plaintiff's employment with Envoy a nightmare. The work environment under Haskins was hostile, predatory, discriminatory, unprofessional, and wholly unpredictable. Plaintiff follows the spiritual beliefs most closely described by the Buddhists and Native Americans, ones which could hardly be misconstrued as Satanic. A pattern of retaliation and humiliation became commonplace. Plaintiff was berated for her medical conditions and religion, and targeted because she attempted to stand up for herself. Haskins called Plaintiff a "Satanist", who could not process anything she saw as "weird" or "abnormal". Besides the physical pain she experienced because of the extra work Haskins foisted upon her, Plaintiff was ostracized and embarrassed by Haskins as much as possible.

16. Haskins also used the threat of reporting Plaintiff to the Virginia Board of Nursing as a means to induce Plaintiff to continued working at Envoy. Plaintiff did not want any blemish on her record. She performed tasks that wreaked havoc on her body because Haskins overtly threatened to lie to the Nursing Board about Plaintiff if she did not do what Haskins ordered. Haskins knowingly misled Plaintiff into doing things she was not hired to do and then extorted her to continue working with threats to expose her to the Nursing Board.

17. As a direct and proximate result of Haskins' actions, Plaintiff suffered long-term effects to her physical and mental health due to the purposeful mistreatment of her by Haskins.

18. Plaintiff was also concerned by the unprofessional practices she saw at Envoy, such as forging her signature to mandatory (but never held) meetings. Envoy administration failed to act or to do anything to protect Plaintiff, endorsing Haskins' misconduct. When a new administrator, "Kortney", was brought in to address the chaos, he promised to give Plaintiff her original position. Kortney gave Plaintiff one week free from treating patients before making her go back and fill in all the missing wound care forms, something that Plaintiff had to do on her day off.

19. Envoy unceremoniously fired Plaintiff on February 21, 2018 as soon as she finished doing all the paperwork Envoy had neglected in the throws of their mismanagement. As a final insult, her official firing date does not reflect the last 24 hours she spent making sure the reports were up to date, working under the assumption that she was finally going to be given the position she was hired to do. Envoy terminated Plaintiff the day before she actually finished the work as a final kick in the teeth for all her hard work trying to get caught up for a position they were never going to let her do as promised. Haskins falsely represented on Plaintiff's termination paperwork that Plaintiff had been there, but had not done any work at all. Plaintiff had worked 13 hours that day. She worked a lot of 13 to 16 hours shifts, when she was supposed to be doing 8. Plaintiff's daughter, who lives with Plaintiff, lost her job because she could not get to work on time because Plaintiff had to stay at Envoy and finish the entire building per Haskins. Haskins told Plaintiff that she would lose her job if she didn't stay. Haskins

also threatened to have Plaintiff work on days that Plaintiff was taking her stepfather (who has passed away) to his chemotherapy. Haskins scheduled "mandatory" meetings and tried to make Plaintiff miss the chemotherapy appointments. All this was done to retaliate against Plaintiff for complaining about the lack of reasonable accommodations.

### COUNT I – FAILURE TO PROVIDE REASONABLE ACCOMODATION

20. Reasonable accommodation is any change or adjustment to a job or work environment that permits an employee with a disability to perform the essential functions of a job, or to enjoy benefits and privileges of employment equal to those enjoyed by employees without disabilities. Reasonable accommodation must be made to enable an individual with a disability to enjoy benefits and privileges of employment equal to those available to other employees. It is a violation of the ADA to fail to provide reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability, unless to do so would impose an undue hardship on the operation of the employer's business. Undue hardship means that the accommodation would require significant difficulty or expense. [https://www.eeoc.gov/facts/ada17.html].

21. Between November 7, 2017 and February 21, 2018, Envoy violated §§ 12112(a-b) and 12201(d) of the ADA. Envoy discriminated against Plaintiff on the basis of disability in regard to her advancement, compensation, discharge, and other terms, conditions, and privileges of employment. Envoy refused to provide reasonable accommodations. Instead, Envoy required Plaintiff to accept working conditions which subjected Plaintiff to substantial personal injury, pain and suffering. Envoy discriminated against Plaintiff because she opposed an act or practice made unlawful by the ADA. Envoy also coerced, intimidated, threatened, or interfered with Plaintiff in the exercise or

enjoyment of, or on account of her having exercised or enjoyed, rights granted or protected by the ADA.

22. At all times relevant to this action, Plaintiff was qualified for her job as wound care coordinator and her job performance was satisfactory.

23. As a direct result of Envoy's discrimination in violation of §§ 12112(a-b) and 12201(d) of the ADA, Plaintiff suffered damage and incurred loss, including, but not limited to, loss of past and future earnings, fringe benefits, humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; injury to her future career, punitive damages, attorney's fees under 42 U.S.C. §§ 1988 and 12205, and costs incurred, in the amount of $850,000.00 or such greater amount as is determined by the Jury.

## COUNT II – DISPARATE TREATMENT UNDER THE ADA

24. Plaintiff has one or more actual disabilities and is a qualified individual under the ADA.

25. Envoy took an adverse employment action against Plaintiff because of her disabilities. Plaintiff suffered a significant change in her employment status because of her disabilities.

26. As a direct result of Envoy's disparate treatment under the ADA, Plaintiff suffered damage and incurred loss, including, but not limited to, loss of past and future earnings, fringe benefits, humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; injury to her future career, punitive damages, attorney's fees under 42 U.S.C. §§ 1988 and 12205, and costs incurred, in the amount of $850,000.00 or such greater amount as is determined by the Jury.

## COUNT III – <u>RETALIATION UNDER THE ADA</u>

27. Plaintiff engaged in protected conduct by complaining to Envoy about the lack of reasonable accommodations.

28. Envoy took an adverse employment action against Plaintiff because of her complaint about Envoy's refusal to provide reasonable accommodations. Envoy denied Plaintiff's request for an accommodation and, when Plaintiff, complained about it, Envoy took action that made Plaintiff's employment 1,000 times more painful and difficult. Envoy threatened retaliatory action against Plaintiff if Plaintiff did not submit to the unreasonable accommodations.

29. As a direct result of Envoy's retaliation in violation of § 12203(a-b) of the ADA, Plaintiff suffered damage and incurred loss, including, but not limited to, loss of past and future earnings, fringe benefits, humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; injury to her future career, punitive damages, attorney's fees under 42 U.S.C. §§ 1988 and 12205, and costs incurred, in the amount of $850,000.00 or such greater amount as is determined by the Jury.

## COUNT IV – <u>FRAUD IN THE INDUCEMENT</u>

30. Plaintiff restates paragraphs 1 through 29 of this Complaint, and incorporates them herein by reference.

31. Envoy fraudulently induced Plaintiff to perform the duties of wound care coordinator and to continue in that position.

32. Plaintiff reasonably and justifiably relied upon Envoy's representations by accepting employment with Envoy and continuing to work at Envoy. But for Envoy's representations, Plaintiff would not have continued her employment at Envoy.

33. Envoy's representations were false at the time they were made. Envoy knew that Plaintiff had disabilities, but concealed the fact that it intended to have Plaintiff perform labor that Plaintiff could not perform. Envoy's intentional omissions and non-disclosures were material to Plaintiff's decision whether to work for Envoy. Envoy acted under false and deceitful pretenses to further its own self-interests. Haskins extorted Plaintiff into continued performance by threats to report Plaintiff to the Nursing Board. These threats induced Plaintiff to continue working for Envoy.

34. Envoy's statements, actions, concealment and non-disclosure constitute fraud in the inducement of the performance of a contract.

35. As a direct and proximate result of Envoy's fraud, Plaintiff suffered damage and incurred loss, including, without limitation, loss of income, insult, pain, mental suffering, attorney's fees, court costs, and other out-of-pocket expenses and damages in the sum of $150,000.00 or such greater amount as is determined by the Jury.

## COUNT V – **BREACH OF CONTRACT**

36. Plaintiff restates paragraphs 1 through 35 of this Complaint, and incorporates them herein by reference.

37. Envoy materially breached and repudiated its contract with Plaintiff by forcing Plaintiff to perform the duties and responsibilities of a position she had refused and under threat of being reported to the Nursing Board if she objected. Envoy also failed to provide the simple material objects (*i.e., a computer*) it agreed to supply so

Plaintiff could perform her duties without pain. Plaintiff told Haskins when she was hired that she needed an iPad or a computer, and she was promised one. Envoy reneged on its promises.

38. As a direct result of Envoy's material breaches of contract, Plaintiff suffered damage and incurred loss, including, but not limited to, loss of income, attorney's fees, court costs, and other out-of-pocket expenses and special damages in an amount to be determined by the Jury, but not less than $150,000.

## COUNT VI – **TORTIOUS INTERFERENCE**

39. Plaintiff restates paragraphs 1 through 38 of this Complaint, and incorporates them herein by reference.

40. Plaintiff had a valid contract, property rights and expectancies in that contract with Envoy. The contract was not terminable at will.

41. Haskins knew about Plaintiff's property rights and business expectancies in the contract.

42. Haskins intentionally interfered with Plaintiff's property rights and business expectancies. Haskins' actions and practices were and are improper, illegal, independently actionable, defamatory, unethical, oppressive, over-reaching, fraudulent, discriminatory, hostile, and sharp.

43. As a direct result of Haskins' misconduct, Plaintiff suffered damage and incurred loss, including, but not limited to, loss of her employment with Envoy, loss of income and property, insult, embarrassment, humiliation, damage to her reputation, attorney's fees, court costs, and other out-of-pocket expenses and damages in the sum of $150,000.00 or such greater amount as is determined by the Jury.

## **Respondent Superior – Vicarious Liability**

Envoy is liable for Haskins' conduct, described above in Counts VI and V, under the doctrine of *respondeat superior* and Virginia common law.

Plaintiff alleges the foregoing based upon personal knowledge, public statements of others, and records in her possession. She believes that substantial additional evidentiary support, which is in the exclusive possession of the Defendants, their clients, agents, surrogates, alter egos, and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Plaintiff reserves the right to amend this Complaint upon discovery of additional instances of Defendants' wrongdoing.

## **CONCLUSION AND REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, Bashan Scheurer-Henry, respectfully request the Court to enter Judgment against Envoy and Haskins, jointly and severally, as follows:

A. Compensatory damages in the amount of $500,000.00 or such greater amount as is determined by the Jury;

B. Punitive damages in the amount of $350,000.00 or the maximum amount allowed by law;

C. Prejudgment interest at the rate of 6% per year on the Principal Sum awarded by the Jury from February 21, 2018 to the date of Judgment;

D. Postjudgment interest at the rate of six percent (6%) per annum until paid;

E. Attorney's Fees;

F.      Expert Witness Fees;

G.      Such other relief as is just and proper.

## TRIAL BY JURY IS DEMANDED

DATED:      June 9, 2021

BASHAN SCHEURER-HENRY

By:   */s/ Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:  (804) 501-8272
Facsimile:   (202) 318-4098
Email:       **stevenbiss@earthlink.net**

*Counsel for the Plaintiff*

14