IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BASHAN SCHEURER-HENRY,
        Plaintiff,

v.                                                        Civil Action No. 3:21cv376

ENVOY OF RICHMOND, LLC d/b/a
ENVOY OF WESTOVER HILLS &
VERONICA M. HASKINS,
        Defendants.

**OPINION**

The plaintiff Bashan Scheurer-Henry sues her former employer, Envoy of Richmond, LLC ("Envoy"), and Veronica M. Haskins, Envoy's then-Director of Clinical Services, alleging three claims under the Americans with Disabilities Act ("ADA") and three state law claims. Specifically, Scheurer-Henry alleges that Envoy violated the ADA by failing to accommodate her disability, treating her differently because of her disability, and retaliating against her because of her complaints about the lack of reasonable accommodations (Counts I through III, respectively).[1] Scheurer-Henry also brings a breach of contract claim against both Envoy and Haskins (Count V) and a tortious interference claim against only Haskins (Count VI).[2]

---

[1] To the extent Scheurer-Henry seeks to bring these ADA claims against Haskins, these claims fail. *See Allen v. Coll. of William & Mary*, 245 F. Supp. 2d 777, 786 (E.D. Va. 2003) ("[I]ndividuals are not liable for violations of the ADA.").

[2] Scheurer-Henry's complaint also contains a claim for fraud in the inducement (Count IV). (ECF No. 1, at 10.) Scheurer-Henry, however, has withdrawn her fraud in the inducement claim. (ECF No. 9, at 11 ("Upon consideration of Envoy's arguments, [Scheurer-]Henry agrees [to] dismiss Count IV of her complaint with prejudice.").) Accordingly, the Court will dismiss Count IV with prejudice.

In addition, Scheurer-Henry has clarified that she sues only Haskins for tortious interference. (*See id.* at 15 n.7 (explaining that she intended to bring Counts IV and V, not Counts V and VI, against Envoy).) The Court will, therefore, consider the plaintiff's tortious interference claim against Haskins, not Envoy.

Envoy and Haskins move to dismiss Scheurer-Henry's complaint for failure to state a claim. (ECF Nos. 4, 18.) For the reasons set forth below, the Court will deny Envoy's motion to dismiss Scheurer-Henry's ADA claims and her breach of contract claim. The Court will grant Haskins's motion as to Scheurer-Henry's breach of contract claim and deny her motion as to Scheurer-Henry's tortious interference claim.

## I. FACTS ALLEGED IN THE COMPLAINT

In October 2017, Scheurer-Henry, a registered nurse who suffers from rheumatoid arthritis and Ehlers-Danlos Syndrome,[3] applied for a job at Envoy, a "174-bed skilled nursing facility in Richmond, Virginia." (*Id.* ¶¶ 2, 9.) Scheurer-Henry interviewed with Haskins. After learning of an open wound care coordinator position, Scheurer-Henry explained to Haskins "that the . . . position was ideal because she . . . would not have to pull and push and tug on patients, actions that [she] could not perform because of her disabilities." (*Id.*) Further, Scheurer-Henry "explained that she did not want to cause or exacerbate the degradation of her muscles, the nerves or anything related to what was going on with her body because of her" disabilities. (*Id.*)

Envoy hired Scheurer-Henry to work four days a week as wound care coordinator. Scheurer-Henry "fully disclosed [to Envoy] her medical conditions and disabilities, requesting minor accommodations, such as an iPad or computer, to use instead of" taking handwritten notes. (*Id.* ¶ 10.) Envoy told her "that . . . she would not have to engage in physical interaction with patients" and "agreed to the simple accommodations of an iPad or computer." (*Id.* ¶¶ 10, 11.)

After some time on the job, Scheurer-Henry realized that Haskins "had misrepresented the actual scope" of the position. (*Id.* ¶ 12.) In addition to her responsibilities as wound care

---

[3] "Ehlers-Danlos syndrome is a group of inherited disorders that affect a person's connective tissues . . . . People who have Ehlers-Danlos syndrome usually have overly flexible joints, and stretchy, fragile skin." (ECF No. 1, at 2 n.1.)

2

coordinator, Haskins demanded that Scheurer-Henry "also perform the job of treatment nurse," giving her "a caseload of 30-80 patients." (*Id.* ¶¶ 12, 13.) This required Scheurer-Henry to work eleven-hour days and "perform strenuous work that Haskins knew [Scheurer-Henry] could not do, such as lift and push patients to treat their wounds, and to walk continuously for hours a day." (*Id.* ¶ 13.) According to Scheurer-Henry, these responsibilities demanded more than what "was physically []possible" for a "perfectly fit person." (*Id.*) These additional responsibilities caused Scheurer-Henry pain and made her physical "conditions worse than they had ever been." (*Id.*) Although Scheurer-Henry told her immediate supervisor about this situation, "nothing was ever done" to improve it. (*Id.* ¶ 14.)

Haskins also fostered a toxic work environment by berating Scheurer-Henry for "her medical conditions and religion" and referring to Scheurer-Henry as a "Satanist." (*Id.* ¶ 15.) Haskins "used the threat of reporting [Scheurer-Henry] to the Virginia Board of Nursing as a means to induce [her] to continue[] working at Envoy." (*Id.* ¶ 16.) Haskins also "scheduled 'mandatory' meetings and tried to make [Scheurer-Henry] miss [her stepfather's] chemotherapy appointments." (*Id.* ¶ 19.)

Although a new supervisor at Envoy "promised to give [Scheurer-Henry] her original position"—wound care coordinator—Scheurer-Henry continued to perform these additional duties until her February 21, 2018 termination. (*Id.* ¶ 18.) In the termination paperwork, Haskins "falsely represented" that Scheurer-Henry had not done any work on a day when Scheurer-Henry "worked 13 hours." (*Id.* ¶ 19.)

## II. **DISCUSSION**[4]

Envoy argues that the Court should dismiss Scheurer-Henry's ADA claims because Scheurer-Henry fails to adequately allege that she is a qualified individual with a disability within the meaning of the ADA. (ECF No. 5, at 1, 6.) Envoy further contends that the Court should dismiss Scheurer-Henry's ADA disparate treatment claim because (1) she "fail[ed] to allege a causal link between her alleged disabilities and any adverse employment action" and (2) failed to exhaust her administrative remedies as to that claim. (*Id.* at 7–9.)

Envoy and Haskins urge the Court to dismiss Scheurer-Henry's breach of contract and tortious interference claims because Scheurer-Henry "does not adequately allege the existence of a valid contract," because she "does not allege that Envoy interfered using improper methods," and because "an entity cannot interfere with its own contract."[5] (*Id.* at 14, 16.)

For the reasons explained below, the Court will deny Envoy's motion to dismiss Scheurer-Henry's ADA claims and her breach of contract claim. Further, the Court will grant Haskins's motion to dismiss Scheurer-Henry's breach of contract claim and deny her motion as to Scheurer-Henry's tortious interference claim.

---

[4] Envoy and Haskins move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion gauges a complaint's sufficiency without resolving any factual discrepancies or testing the claims' merits. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).
 The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a facially plausible claim to relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

[5] The final argument serves to defend Envoy, not Haskins. But Haskins opted to "adopt[] and incorporate[]" Envoy's arguments instead of raising her own. (ECF No. 18.)

### A. ADA

#### 1. Qualified Individual with a Disability

Envoy asks the Court to dismiss Scheurer-Henry's ADA claims, arguing that Scheurer-Henry's allegations do not show that she "is a 'qualified individual with a disability.'" (ECF No. 5, at 4 (quoting *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 (4th Cir. 2004).)  This argument fails.

The ADA "defines a 'qualified individual with a disability' as 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position.'" *Boitnott v. Corning Inc.*, 669 F.3d 172, 174 (4th Cir. 2012) (quoting 42 U.S.C. § 12111(8)).  The ADA "defines 'disability' as 'a physical or mental impairment that substantially limits one or more major life activities of such individual.'" *Id.* (quoting 42 U.S.C. § 12102(1)(A)). "Major life activities include 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" *Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 875 (4th Cir. 2020) (quoting 42 U.S.C. § 12102(2)(A)).  "For a major life activity to be 'substantially limit[ed],' the impairment need only 'substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population.'" *Id.* (alterations in original) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

Scheurer-Henry adequately alleges that she is a qualified individual with a disability. First, she adequately alleges that she has a disability. She claims that her rheumatoid arthritis and Ehlers-Danlos syndrome prevented her from pulling, pushing, and tugging on patients. When viewing the complaint's allegations in the light most favorable to Scheurer-Henry, the Court can reasonably infer that her difficulty pulling, pushing, and tugging extends beyond dealing with patients.

Accordingly, the Court can infer that, at minimum, her rheumatoid arthritis and Ehlers-Danlos syndrome impair her ability to complete the major life activities of "performing manual tasks" and "lifting." *Id.* (quoting 42 U.S.C. § 12101(2)(A)). Scheurer-Henry also alleges that taking handwritten notes "was very difficult with rheumatoid arthritis." (ECF No. 1 ¶ 10.) In other words, she alleges that rheumatoid arthritis makes it more difficult to perform the manual task of writing.

Because Scheurer-Henry alleges that, despite her disabilities, she could perform the essential functions of wound care coordinator if given reasonable accommodation, she also adequately alleges that she is a qualified individual. She alleges "that the wound care coordinator position was ideal because she . . . would not have to pull and push and tug on patients, actions that [she] could not perform because of her disabilities." (*Id.* ¶ 9.) She further alleges that she could perform the notetaking required of wound care coordinators if Envoy had provided her the "minor accommodations, such as an iPad or computer," that it agreed to provide her. (*Id.* ¶¶ 10, 11.) Thus, Scheurer-Henry adequately alleges that she is a qualified individual with a disability.[6]

---

[6] In its reply brief, Envoy contends that the Court should dismiss Scheurer-Henry's ADA retaliation claim (Count III) because (1) "[t]he ADA does not prohibit an employer from denying an accommodation to an employee who is not disabled and does not require an accommodation," and (2) Scheurer-Henry did not "reasonably believe[] she was denied an accommodation to which she was entitled under the ADA[—an iPad or computer for notetaking—]since [she] apparently performed her job for several months without the accommodation." (ECF No. 10, at 7, 8.) Both arguments fail. First, for the reasons stated above, Scheurer-Henry adequately alleges that she is a qualified person with a disability who required reasonable accommodation. Second, the Court finds that, when viewing the complaint's allegations in the light most favorable to Scheurer-Henry, she alleges that she had a reasonable, good faith belief that Envoy violated the ADA by not providing her with an iPad or computer to take notes.

### 2. *Exhaustion of Administrative Remedies*

Envoy asks the Court to dismiss Scheurer-Henry's ADA disparate treatment claim (Count II) because she "has not exhausted her administrative remedies for a claim of disparate treatment." (ECF No. 5, at 8.)

An ADA "plaintiff must exhaust [her] administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court." *Sydnor v. Fairfax County*, 681 F.3d 591, 593 (4th Cir. 2012). The contents of the plaintiff's EEOC charge determine "the 'scope of the plaintiff's right to file a federal lawsuit.'" *Id.* (quoting *Jones v. Calvert Grp., Ltd.*, 551 F3d 297, 300 (4th Cir. 2009), *abrogated on other grounds by Ford Bend County v. Davis*, 139 S. Ct. 1843 (2019)). Accordingly, "a plaintiff fails to exhaust his administrative remedies where . . . [her] administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [her] formal suit." *Id.* (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005)). But plaintiffs need not "provide a detailed essay to the EEOC in order to exhaust their administrative remedies." *Id.* at 594. The Court, therefore, must construe a plaintiff's charge, "to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Id.* (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 406 (2008)). Ultimately, if "'a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation,' she 'may advance such claims in her subsequent civil suit.'" *Id.* (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)).

In her EEOC charge, Scheurer-Henry checked boxes indicating that she faced discrimination based on race, retaliation, and disability. (ECF No. 5-1.)[7] Despite checking the box for disability discrimination, Envoy claims that Scheurer-Henry "does not claim that she was discriminated against . . . because of her alleged disability—rather, [she] explicitly alleges discrimination on the basis of race, color, and religion." (ECF No. 5, at 9.) Envoy bases this argument on the narrative portion of Scheurer-Henry's EEOC charge, which, in relevant part, reads:

> I believe that I was denied reasonable accommodation because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended. I also believe I was suspended and discharged because of my race (mixed race), color (lighter skin), religion (Wiccan), and in retaliation for complaining of unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(ECF No. 5-1.) In essence, Envoy argues that Scheurer-Henry nullified her disability discrimination claim by specifically mentioning racial, color, and religious discrimination in the narrative portion of her EEOC charge.

The Court refuses to impose this hyper-technical pleading requirement on Scheurer-Henry. Her EEOC charge clearly indicates an allegation of disability discrimination. Scheurer-Henry's mention of other forms of discrimination does not invalidate this allegation. Moreover, Scheurer-Henry's EEOC charge and complaint both refer to the same discriminatory conduct by the same actors over the same time. Stated differently, the complaint's claims "are reasonably

---

[7] Even though Scheurer-Henry did not attach her EEOC charge to her complaint, the Court may consider it when ruling on Envoy's motion to dismiss because Scheurer-Henry's EEOC charge "was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *see also Bowie v. Univ. of Md. Med. Sys.*, No. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's Complaint . . . even if the EEOC charge is not filed with the Complaint.").

related to her EEOC charge and can be expected to follow from a reasonable administrative investigation." *Sydnor*, 681 F.3d at 594 (quoting *Smith*, 202 F.3d at 247). Simply put, "[t]he touchstone for exhaustion is whether [the] plaintiff's administrative and judicial claims are 'reasonably related,' *Smith*, 202 F.3d at 247, not precisely the same, and there are sufficient similarities between the two to find this requirement satisfied here." *Sydnor*, 681 F.3d at 595.

### 3. Adverse Employment Action

In addition to arguing that Scheurer-Henry failed to exhaust her administrative remedies as to Count II, Envoy contends that Scheurer-Henry cannot pursue her ADA disparate treatment claim because she "fails to adequately allege an adverse employment action as a result of disability discrimination." (ECF No. 5, at 7.)

To plead a prima facie ADA discrimination claim, a plaintiff must prove, among other things, that "she suffered an adverse employment action based on her disability." *Laird v. Fairfax County*, 978 F.3d 887, 892 n.4 (4th Cir. 2020). In the ADA discrimination context, this means that "the plaintiff must show that her employer took an action that adversely 'affect[ed] *employment* or alter[ed] the conditions of the *workplace*.'" *Id.* at 893 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006)). "[T]he adverse action must result in 'some *significant detrimental effect*,' requiring more than a position that is 'less appealing' to the plaintiff." *Id.* (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)). The Second Circuit has held that the imposition of a disproportionately heavy workload can amount to an "adverse employment action" in certain circumstances. *Feingold v. New York*, 366 F.3d 138, 152–53 (2d Cir. 2004).

Envoy correctly points out that Scheurer-Henry "never claims that her termination was related to her disability." (ECF No. 5, at 7.) But Scheurer-Henry does claim that because of her

disability, Envoy required her to perform tasks beyond those assigned to her as wound care coordinator. (ECF No. 1 ¶¶ 12, 25.) Specifically, Haskins, who knew of Scheurer-Henry's physical limitations, "demanded that [Scheurer-Henry] work eleven . . . hour days to cover two positions" and "ordered [her] to perform strenuous work that Haskins knew [she] could not do, such as lift and push patients to treat their wounds, and to walk continuously for hours a day." (*Id.* ¶¶ 12, 13.) Although Scheurer-Henry "reasonably expected to . . . coordinate nurses and treatment schedules" as wound care coordinator, Haskins had her "individually treat every wound personally," assigning her 30 to 80 patients, "a caseload . . . that [is] physically impossible for even a perfectly fit person to complete in 4 work days." (*Id.* ¶ 13.) In addition, Haskins "berated" Scheurer-Henry for her medical conditions. (*Id.* ¶ 15.) Although changes in job duties do not necessarily constitute an adverse action,[8] in this case, because of the degree of the changes in Scheurer-Henry's duties and the surrounding context, including her eventual termination, the Court finds that Scheurer-Henry adequately pleads that she suffered an adverse employment action as a result of her disability.

\* \* \*

For these reasons, the Court will deny Envoy's motion to dismiss Scheurer-Henry's ADA claims and will allow Counts I through III to proceed.

---

[8] *See, e.g.*, *Johnson v. Quin Rivers Agency for Cmty. Action, Inc.*, 140 F. Supp. 2d 657, 664 (E.D. Va. 2001) (finding, in a Title VII case, no adverse action when employee's duties changed, but title and salary remained the same); *see also Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) ("Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases.").

### B. *Breach of Contract*

Scheurer-Henry alleges that Envoy breached its contract with her by "forcing [her] to perform the duties and responsibilities of a position she had refused and under threat of being reported to the Nursing Board if she objected" and by failing "to provide the simple material objects . . . it agreed to supply so [she] could perform her duties without pain." (ECF No. 1 ¶ 37.) To state a claim for breach of contract, Scheurer-Henry must allege "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).[9] Envoy claims that Scheurer-Henry does not plead a prima facie breach of contract claim because she "has not provided factual support showing the existence of a valid contract." (ECF No. 10, at 9.)[10]

To plead that she and Envoy had a contract—whether oral or written—Scheurer-Henry must allege offer, acceptance, and consideration. *See Dean v. Morris*, 287 Va. 531, 536, 756 S.E.2d 430, 432–33 (2014) ("To prove a contract's existence, all of the essential elements must be proven. '[T]here must be a complete agreement which requires acceptance of an offer, as well as valuable consideration.'" (quoting *Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 346, 269 S.E.2d

---

[9] Virginia law applies to Scheurer-Henry's breach of contract and tortious interference claims because she alleges that she made her contract with Envoy in Virginia. *See Klein v. Verizon Commc'ns, Inc.*, 674 F. App'x 304, 307–08 (4th Cir. 2017).

[10] *See Colonna's Shipyard, Inc. v. City of Key West*, No. 2:10cv63, 2011 WL 2634045, at *8 (E.D. Va. May 12, 2011) (applying Virginia law) ("To claim a breach of contract, the Plaintiff must first establish that there was a valid contract to be breached." (quoting *Sykes v. Brady-Bushey Ford, Inc.*, No. 04-225, 2005 WL 2787517, at *6 (Va. Cir. Ct. Oct. 27, 2005))).

838, 844 (1980))).[11] "[A]n agreement, in order to be binding, must be sufficiently definite to enable a court to give it an exact meaning, and must obligate the contracting parties to matters definitely ascertained or ascertainable." *Dean*, 287 Va. at 538, 756 S.E.2d at 433 (quoting *Smith v. Farrell*, 199 Va. 121, 127–28, 98 S.E.2d 3, 7–8 (1957)).[12]

Here, when viewing the facts in the light most favorable to her, Scheurer-Henry has alleged the existence of an oral contract. Scheurer-Henry alleges that when Envoy offered her the position of wound care coordinator, it "represented to [her] that if she accepted the employment, she would not have to engage in physical interaction[s] with patients" and it would provide her "some minor accommodations, such as an iPad or computer" to aid her notetaking. (ECF No. 1 ¶ 10.) These offers induced Scheurer-Henry's acceptance. (*Cf. id.* ¶ 9 (Scheurer-Henry "explained to Haskins that the wound care coordinator position was ideal because she . . . would not have to pull and push and tug on patients, actions that [she] could not perform because of her disabilities.").) And each party gave consideration: Scheurer-Henry her time; Envoy its money. Moreover, the agreement's definite terms "enable the parties and the [C]ourt[] to give the agreement exact meaning." *Colonna's Shipyard*, 2011 WL 2634045, at *8 (quoting *Lamers*, 2008 WL 779516, at *3). Thus, Scheurer-Henry has pled the existence of a valid contract.

She has also pled the other elements of a breach of contract claim. She contends that Envoy forced her to perform the duties of a treatment nurse and did not give her the accommodations it

---

[11] *See also Colonna's Shipyard*, 2011 WL 2634045, at *8 ("A contract requires an offer, acceptance, and valuable consideration." (quoting *Lamers v. Org. Strategies, Inc.*, No. 1:08cv101, 2008 WL 779516, at *3 (E.D. Va. Mar. 24, 2008))).

[12] *See also Colonna's Shipyard*, 2011 WL 2634045, at *8 ("For an oral contract to be valid and enforceable in Virginia, the terms of the contract must be 'reasonably certain, definite and complete to enable the parties and the courts to give the agreement exact meaning.'" (quoting *Lamers*, 2008 WL 779516, at *3)).

promised her. (ECF No. 1 ¶¶ 12, 37.) These breaches allegedly caused her at least $150,000 in damages. (*Id.* ¶ 38.) The Court, therefore, will deny Envoy's motion to dismiss Scheurer-Henry's breach of contract claim.

To the extent Scheurer-Henry also asserts a breach of contract claim against Haskins, it fails. Because Haskins was "not a party to the employment contract," she "cannot be held individually liable for breach of contract." *Jones v. Pro. Hosp. Res., Inc.*, 35 Va. Cir. 458, 462–63 (1995). The Court, therefore, will grant Haskins's motion to dismiss Scheurer-Henry's breach of contract claim.

### C. *Tortious Interference*

Scheurer-Henry claims that Haskins tortiously interfered with Scheurer-Henry's employment contract with Envoy "by causing [Scheurer-]Henry's performance to become more burdensome, by harassing, retaliating and extorting [Scheurer-]Henry, and by publishing false and defamatory statements about [Scheurer-]Henry." (ECF No. 9, at 13.) Specifically, Scheurer-Henry says that Haskins demanded more of her than her contracted-for role of wound care coordinator required. Haskins knew that Scheurer-Henry could not satisfy many of these demands due to her disability. Further, Haskins "berated" Scheurer-Henry "for her medical conditions and religion," calling her a "Satanist." (ECF No. 1 ¶ 15.) Haskins ensured Scheurer-Henry's silence and "induce[d her] to continue working at Envoy" by threatening to report her to the Virginia Board of Nursing. (*Id.* ¶ 16.) According to Scheurer-Henry, she lost her employment with Envoy "[a]s a direct result of Haskins' misconduct." (*Id.* ¶ 43.)

> In Virginia, the elements of a claim for tortious interference with contractual relations are typically recited as (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Schaecher v. Bouffault*, 290 Va. 83, 106, 772 S.E.2d 589, 602 (2015). A plaintiff can satisfy the third element by alleging "more indirect interference on behalf of the defendant," *id.* at 107, 772 S.E.2d at 602; specifically, that the defendant's interference causes the plaintiff's performance of the contract "to become more expensive or burdensome." Restatement (Second) of Torts § 766A. "Additionally, when a contract is *terminable at will*, a plaintiff . . . must allege and prove not only an *intentional* interference that caused the termination of the at-will contract, but also that the defendant employed *improper* methods." *Lewis-Gale Med. Ctr., LLC v. Alldredge*, 282 Va. 141, 149, 710 S.E.2d 716, 720 (2011) (emphases in original) (quoting *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 559, 708 S.E.2d 867, 870 (2011)).

> Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules. Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship. . . .
>
> Methods also may be improper because they violate an established standard of a trade or profession, or involve unethical conduct. Sharp dealing, overreaching, or unfair competition may also constitute improper methods.

*Dunn*, 281 Va. at 559, 708 S.E.2d 870 (quoting *Duggin v. Adams*, 234 Va. 221, 227–28, 360 S.E.2d 832, 837 (1987)). But improper methods do not include "'actions solely motivated by spite, ill will and malice' toward the plaintiff." *Lewis-Gale*, 282 Va. at 151, 710 S.E.2d at 721 (quoting *Dunn*, 281 Va. at 559, 708 S.E.2d at 870).

Scheurer-Henry adequately alleges all the elements of a tortious interference claim. First, for the reasons explained above, she alleges that a valid employment contract existed between her and Envoy. Second, Haskins knew about Scheurer-Henry's employment contract with Envoy; indeed, Haskins offered Scheurer-Henry the position of wound care coordinator. Third, by asking

Scheurer-Henry to do more than her position required and making hostile her work environment, Haskins made it more burdensome for Scheurer-Henry to satisfy her employment contract. Fourth, Scheurer-Henry suffered the physical consequences of the additional tasks Haskins demanded she perform, and eventually she lost her job with Envoy. Finally, Haskins deceived Scheurer-Henry by hiring her for the wound care coordinator position but then demanding that she also complete the duties of a treatment nurse; she "overtly threatened to lie" to the Virginia Board of Nursing about Scheurer-Henry, (ECF No. 1 ¶ 16); and she lied about Scheurer-Henry's work on her termination paperwork.[13]

Because Scheurer-Henry alleges all the elements of her tortious inference claim against Haskins, the Court will deny Haskins's motion to dismiss the tortious interference claim.

### III. CONCLUSION

For the reasons stated herein, the Court will deny Envoy's motion to dismiss Scheurer-Henry's ADA claims and her breach of contract claim, and grant Envoy's motion to dismiss Scheurer-Henry's fraud in the inducement claim. The Court will grant Haskins's motion to dismiss Scheurer-Henry's breach of contract claim and deny her motion as to Scheurer-Henry's tortious interference claim.

---

[13] The parties dispute whether Scheurer-Henry's contract was terminable at will and, thus, whether Scheurer-Henry must show that Haskins used improper methods. (*Compare* ECF No. 1 ¶ 40, *with* ECF No. 5, at 16.) But Scheurer-Henry adequately alleges that Haskins used improper methods to interfere with her contract, so the Court will deny Haskins' motion without deciding whether the contract was terminable at will.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 3 December 2021
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

Digitally signed by John Gibney
Date: 2021.12.03 14:55:03 -05'00'

16